Jerome L. **DOFF** et al., Appellants,

v.

**BRUNSWICK CORPORATION,** Appellee.

No. 20192.

United States Court of Appeals
Ninth Circuit.

Dec. 28, 1966.

Rehearing Denied Feb. 3, 1967.

Jerome L. Doff, Beverly Hills, Cal., in pro. per. and for appellant.

Lawler, Felix & Hall, Thomas E. Workman, Jr., Los Angeles, Cal., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for appellee.

Before BARNES and KOELSCH, Circuit Judges, and TAYLOR, District Judge.

KOELSCH, Circuit Judge.

Brunswick Corporation brought this diversity action to recover the unpaid balance due under certain loans by Brunswick to Transa Structures, Inc. and guaranteed by appellants Jerome and Mildred Doff. The District Court granted summary judgment on the guaranty. This appeal followed.

In March 1962 Brunswick signed a loan agreement with Transa by the terms of which Brunswick agreed to make or obtain loans for Transa up to an aggregate sum of $600,000. Brunswick arranged for over $470,000 in loans to Transa, none of which was repaid at maturity. Accordingly, it sued the Doffs as guarantors of the notes.

The Doffs contend that Transa (and through it the Doffs) has a valid defense to this action because Brunswick had breached the loan agreement by refusing to loan Transa, upon demand, sums in excess of $470,000. Brunswick rejoins that it was relieved of its obligation to loan the entire $600,000 by Transa's prior default on certain conditions precedent to obtaining a loan. The Doffs counter

with the assertion that, even if some of these conditions were not fulfilled, Transa made a demand for the $130,000 before any of Transa's alleged defaults and thus it was Brunswick that committed the first breach.

In addition to opposing Brunswick's claim for the money allegedly due under the guaranty, the Doffs counterclaimed for damages caused by Brunswick's failure first to loan the full $600,000 to Transa and second to purchase the Doff's shares of stock in Transa pursuant to a purchase agreement incorporated into the loan agreement heretofore described.

The District Court determined that there was no genuine issue as to any material fact in that respondent's allegations of default by Transa were never controverted by appellants and that the alleged default automatically made appellants liable under their guaranty. Moreover, the court dismissed the counterclaim on the ground that the purported purchase agreement was an option rather than a consummated sale.

■ The matter was submitted to the District Court upon affidavits as provided in Rule 56(e) of the Federal Rules of Civil Procedure. As a result neither party may rest upon the mere allegations or denials in its pleadings; we are confined to an examination of the contents of these affidavits. See e. g., First National Bank in Billings v. First Bank Stock Corp., 306 F.2d 937, 943 (9th Cir. 1962).

The District Court found that Transa had committed two defaults under the loan agreement, one on May 15, 1962, the other on May 23, 1962. Since the Doffs assert that Brunswick was the first party in breach, the date of Transa's demand for a further loan is crucial.

■ Jerome Doff's affidavit is sufficiently vague to leave this matter in doubt. In it he says: "I know of my own knowledge that Transa's demand on Brunswick for the balance of $130,000 was made *prior to* May 23, 1962. * * * " (Emphasis added.) This allegation was never denied by respondents. Accord-

ingly, it must be taken as true and Brunswick cannot rely upon the default of May 23 to excuse its obligation to loan the $130,000.

This leaves only the asserted default under section 5 of the loan agreement, which provides in part pertinent here:

"5.  All of the following conditions precedent must have occurred prior to the making of any loans under this loan agreement;

\*     \*     \*     \*     \*     \*

5.2  Transa shall have assigned or caused to be assigned to Brunswick, or to the other lender hereunder * * * all sums due and to become due to Transa * * * in connection with the California Contracts (which shall include at least thirty (30) units) * * * provided, however, that, except as hereinafter provided, all of the foregoing contracts need not be assigned, prior to any requested loan, if the amount of the requested loan, together with all the outstanding loans hereunder, does not exceed the moneys due and to become due under such of the foregoing contracts as have been assigned as aforesaid. * * * In any event all of the foregoing contracts shall be assigned to Brunswick or such other lender prior to May 15, 1962, as security for all loans hereunder."

In one of its moving affidavits Brunswick claims that "by June 15, 1962 said Transa Structures, Inc. was and for some time had been in default," since "section 5.2 of said loan agreement required the proceeds of the sale of at least thirty units of the California Contracts to be assigned to the lender prior to May 15, 1962, but the number of units sold and assigned prior to May 15, aggregated less than nine units. * * * "

■ It is clear from reading section 5.2 that if Transa's demand was made after May 15, Transa was already in default because at least thirty units had to

be assigned "in any event," by that date. However, since the affidavits of the party opposing summary judgment should be indulgently treated, [United States for Use and Benefit of Austin v. Western Electric Co., 337 F.2d 568, 575 (9th Cir. 1964)], Doff's statement that the demand was made "prior to May 23, 1962" should be read liberally. Thus, for the purposes of argument, Transa's demand was made prior to May 15, the date which triggered the "in any event" clause.

Now we come to the crux of the matter: Was Transa entitled to a loan of $130,000 from Brunswick prior to May 15? Under the terms of the loan agreement Transa's right to obtain a loan was expressly conditioned upon the prior assignment of the sums due under at least thirty units of the California Contracts. But Brunswick alleged that only nine such units had been assigned. However, the requirement that thirty units be assigned could itself be excused if the moneys due under those units which had been assigned exceeded the amount of the requested loan together with all the outstanding loans previously made.

Even though it is possible that, by reason of the above provisions, Transa had

fulfilled all its obligations prior to demand, the District Court ruled that there was no genuine issue of fact because Doff never controverted Brunswick's allegation of default.

■ Appellants contend that they did put the question of default into issue. But Doff's counter-affidavit is so vague that even under the rule of liberal construction of a counter-affiant's papers we would have to strain to hold that it suggests a denial of default. More is required from an affiant than mere hearsay and legal conclusion.[1] Engelhard Industries, Inc. v. Research Instrumental Corp., 324 F.2d 347 (9th Cir. 1963), cert. denied, 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964); Washington v. Maricopa County, 143 F.2d 871 (9th Cir. 1944).

■ In any event, we find it unnecessary to indulge in such verbal contortions. In his affidavit supporting a motion to reconsider the order granting summary judgment to Brunswick, Jerome Doff unequivocally stated that he had no personal knowledge of any of the events in regard to Transa's default.[2] For all practical purposes this admission

---

1. Jerome Doff's affidavit contained two statements on which appellants rely. In one Doff said: "It was my understanding that all of the contracts which were to be assigned to Brunswick under the Loan Agreement had either been assigned to Brunswick or were held by Brunswick in a condition for assignment * * *." Doff does not say Transa did in fact assign the contracts; he says only that he "understands" that they did. The other statement reads as follows: "During the month of May, 1962, Transa Structures made repeated demands upon Brunswick for the balance of $130,000 which Brunswick was obligated to loan to Transa under the Loan Agreement. * * *" Appellants argue that Brunswick would be "obligated to loan" only if Transa had not committed a prior default. Appellants assert that by necessary implication they have controverted Brunswick's obligation of default by Transa.

   Both these statements suffer from the same defects. They do not contain

"specific facts" based on "personal knowledge" about which "the affiant is competent to testify" as required by Rule 56 (e) of the Federal Rules of Civil Procedure.

2. "During the months of March, April, May and June, 1962, I was in the City of New York, State of New York on a combined business and vacation trip and I had *no personal knowledge of the facts* concerning the performance of Transa Structures, Inc. of its obligations under the Loan Agreement of March 21, 1962." Doff went on to say that he wanted time to locate the president and business manager of Transa because "they are the persons who have personal knowledge of the facts surrounding Transa's performance of the Loan Agreement in 1962 and it is *only* by their counter affidavits that I can establish that Transa was not in default under the Loan Agreement when demand was made upon Brunswick for the balance of the $600,000 which Brunswick was obligated to loan to Transa." (Emphasis supplied).

completely devitalized his prior affidavit. The net effect is the same as if Doff never filed a counter-affidavit at the original hearing; the allegation of default was never denied.

Appellants, though, have still another string to their bow. As pointed out heretofore, appellants would not have been in default prior to May 15 if the moneys due under the nine assigned units exceeded in value the aggregate of the requested loan and the previously outstanding loans. Admittedly, if this case had proceeded to trial the Doffs would have had the burden of proving that the condition precedent requiring assignment of at least thirty units had been excused by reason of the above proviso. But on a motion for summary judgment it is the moving party who carries the burden of proof; he must show that no genuine issue of material fact exists and this is true even though at the trial his opponent would have the burden of proving the facts alleged. Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1952); Plank v. Schifter, 85 F.Supp. 397 (E.D.Pa. 1949); 6 Moore, Federal Practice ¶ 56.15[3], at 2342 (2d ed. 1965).

Concededly, had this affirmative defense been put into issue, Brunswick would have been obliged to negate it. But nowhere did appellants raise the defense. Jerome Doff's affidavit did no more than parrot back the relevant contractual clause;[3] not once did he assert that the excusing condition had in fact occurred.

Where, on the basis of the materials presented by his affidavits, the moving party, if at trial, would be entitled to a directed verdict unless contradicted, it rests upon the opposing party at least to specify some evidence to show that such contradiction is possible.

First National Bank in Billings v. First Bank Stock Corp., 306 F.2d 937 (9th Cir. 1962); Gifford v. Travelers Protective Ass'n, 153 F.2d 209 (9th Cir. 1946). The burden of coming forward with specific controverting facts shifts to the opponent. Warren v. Lawler, 343 F.2d 351 (9th Cir. 1965); International Longshoremen's & Warehousemen's Union v. Kuntz, 334 F.2d 165 (9th Cir. 1964); Bros. Inc. v. W. E. Grace Mfg. Co., 261 F.2d 428 (5th Cir. 1958); Zoby v. American Fidelity Co., 242 F.2d 76 (4th Cir. 1957). It is his duty to expose the existence of a genuine issue which will prevent the trial from being a useless formality. 3 Barron & Holtzoff, Federal Practice and Procedure § 1237, at 171 (Wright ed. 1958). If he has a plausible ground of defense, he must assert it. Robson v. American Casualty Co., 304 F.2d 656 (7th Cir. 1962); Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 137 F.2d 871 (6th Cir. 1943), cert. denied, 320 U.S. 800, 64 S.Ct. 431, 88 L.Ed. 483 (1944).

We cannot agree with appellant's contention that the movant has the burden of proving the invalidity not only of defenses which have been put into issue but also of every defense which conceivably could be raised. Appellants fail to distinguish between the burden of proof and the burden of allegation. Had the defense been put into issue, Brunswick would have been compelled to refute it. But Brunswick need not present proof negating mere hypothetical defenses. To oppose the motion successfully, appellants were obliged to come forward and show the existence of a conflict. United States v. Mt. Vernon Milling Co., 345 F.2d 404 (7th Cir. 1965) This they did not do.

Affirmed.

---

3. "Also, a further reading of paragraph 5.2 of the loan agreement clearly indicates that there is no obligation on Transa to assign all of the contracts to Brunswick prior to May 15, 1962 if the total amount of the contracts that had already been assigned exceeded the amount of the loans."