**DeLONG CORPORATION, Appellant,**

v.

**RAYMOND INTERNATIONAL, INC.**

No. 79–1509.

United States Court of Appeals,
Third Circuit.

Argued Dec. 11, 1979.

Decided April 14, 1980

Richard D. Catenacci, Connell, Foley & Geiser, Newark, N. J., for appellant; David E. Varner, William K. West, Jr. (argued), Akin T. Davis, Cushman, Darby & Cushman, Washington, D. C., of counsel.

Frank L. Bate, Shanley & Fisher, Newark, N. J., for appellee; Joseph M. Fitzpatrick, John A. O'Brien (argued), Fitzpatrick, Cella, Harper & Scinto, New York City, of counsel.

Before ADAMS, ROSENN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

We are asked on this appeal to consider a decision by the United States District Court for the District of New Jersey entering summary judgment for the defendant in an action for infringement of two patents. The district court held that the invention covered by the later or second patent was "on sale" more than one year prior to the date of the application for the patent and thus was invalid under 35 U.S.C. § 102(b). The court also found that this patent had been obtained by fraud and therefore, under the equitable doctrine of "unclean hands," dismissed with prejudice the plaintiff's complaint as to the infringement of the earlier or first patent. Because we agree with the plaintiff-appellant that there are genuine issues of material fact as to the allegations of fraud, we reverse the entry of summary judgment on this issue and remand to the district court. However, as to the district court's determination that the second patent is invalid because of its failure to comply with the "on sale" provision of 35 U.S.C. § 102(b), we affirm.

### I.

DeLong Corporation ("DeLong") is the owner of U. S. Patent No. 2,841,961 ("Lucas patent") granted on July 8, 1958, for Offshore Drilling Barge, in the name of Joseph F. Lucas as inventor. DeLong also owns U. S. Patent No. 3,422,505 ("Slemmons patent") granted January 21, 1969, on an application filed November 3, 1967, for Two-Piece Releasable Gripper, in the name of Charles O. Slemmons as inventor. DeLong acquired the rights to that invention pursuant to an agreement entered into in Decem-

ber 1966 by which General Tire and Rubber Co. ("General Tire") and Slemmons assigned to DeLong their rights in the invention, including the right to prepare and file appropriate patent applications.

The Lucas Patent is directed principally to so-called slip jacks for erecting massive marine platforms of the jack-up or self-elevating type on supporting legs. Slip jacks use a segmental metal ring having tapered wedge-shaped segments surrounded by an outer one-piece ring having a tapered inner surface for urging the segments into gripping engagement with a cylindrical supporting leg by a mechanical wedging action. The Slemmons patent covers improvements in the gripping mechanism of the DeLong air jacks used for erecting marine platforms of the jack-up type on supporting legs. Air jacks operate on a different principle than slip jacks. Air jacks, in contrast with slip jacks, use a hollow inflatable rubber ring disposed in an inwardly-facing rigid annular channel so that, on inflation, the rubber ring will grip a cylindrical supporting leg by a pneumatic gripping or contracting action.

DeLong filed its original complaint on May 17, 1976, charging Raymond International, Inc. ("Raymond"), with infringement of the Lucas patent in violation of 35 U.S.C. § 271 (1976).[1] On April 28, 1977, DeLong filed an amended complaint charging Raymond, in addition, with inducing the infringement of the Slemmons patent.

After completion of some discovery Raymond filed a motion for summary judgment. The rulings Raymond sought were primarily three. First, Raymond sought to have the Slemmons patent declared invalid on the ground that the invention covered by the patent was "on sale" more than one year before the date of the application for the patent. The basis for this assertion was a purchase order issued by DeLong on June 20, 1966 to General Tire for 54 rubber grippers. The first shipment of these grippers was apparently received by DeLong on October 31, 1966. Second, Raymond sought a declaration that DeLong's failure to inform the Patent Office that the Slemmons patent had been on sale more than one year prior to the date of the patent application constituted fraud. Finally, Raymond asked that the amended complaint be dismissed and DeLong denied all relief, even as to the Lucas patent, because of its "unclean hands" in obtaining the Slemmons patent. The district court granted Raymond's motion.

Thereafter DeLong moved, under Local Rule 12–I, for reargument of Raymond's motion for summary judgment, to vacate the district court's order, and for an order denying Raymond's motion, under Fed.R.Civ.P. 52(b).[2] The court, however, denied this motion. DeLong raises several arguments on appeal.[3] First, it asserts that

---

1. Jurisdiction in the district court was based on 28 U.S.C. § 1338 (1976).

2. Fed.R.Civ.P. 52(b) provides, *inter alia*, that "[u]pon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly." Even though a district court's statement of the undisputed facts may be helpful to a reviewing court, *see Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207 (8th Cir. 1976), it is not appropriate for a district court to resolve conflicting issues of material fact on a motion for summary judgment, *see DeTar Distributing Co. v. Tri-State Motor Transit Co.*, 379 F.2d 244 (10th Cir. 1967). Thus, a district court does not engage in fact-finding, within the meaning of Rule 52, on a motion for summary judgment. It follows, then, that a 52(b) motion for amendment of a district court's findings is not appropriate after its consideration of

a motion for summary judgment. Such a motion for reconsideration of an order for summary judgment may, however, be properly considered as a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e). *See Sonnenblick-Goldman Corp. v. Norwalk*, 420 F.2d 858 (3d Cir. 1970).

3. Although not raised by the parties, the court *sua sponte* requested supplemental briefing as to whether the district court's reservation of the issue of attorneys fees deprived its order of the finality necessary for appellate review. Both parties assert that the order is appealable and advance several arguments in support of that contention. We agree that there is an appealable order and therefore find jurisdiction.

The district court apparently determined that Raymond, as the prevailing party in this patent case, was entitled to recover reasonable attor-

the district court abused its discretion in denying DeLong's motion for reargument. Second, DeLong argues that there was a genuine issue of material fact whether the Slemmons invention was on sale more than one year prior to the date of the patent application, and thus the district court erred in entering summary judgment for Raymond on this issue. Third, DeLong argues that even if the district court did not err in holding the Slemmons patent invalid there were, nevertheless, genuine issues of material fact as to whether it was obtained by fraud. Finally, DeLong asserts that even if the district court did not err in holding that the Slemmons patent had been procured by fraud, it nevertheless erred when it applied the "unclean hands" doctrine and dismissed the action based on the earlier Lucas patent. We consider each of these arguments seriatim.

## II.

■ In the district court's consideration of Raymond's motion for summary judgment DeLong presented no evidentiary affidavits in opposition. Rather, it filed a memorandum noting the "stringent requirements for summary judgment" and arguing that what was "on sale" was not the Slemmons invention but merely a component of the combination invention claimed

in the Slemmons patent. However, in support of its motion for reargument with the district court, DeLong submitted additional documents and affidavits.[4] Those were intended in part to indicate that the inferences drawn by the district court adverse to DeLong were contrary to fact. DeLong argues that "[s]ince an evidentiary showing by DeLong was not required at the time of [the] hearing [on the motion for summary judgment] . . . it follows that when DeLong did present evidence which demonstrated the existence of issues of material facts beyond peradventure, the district court ought to have reconsidered and denied Raymond's motion [for summary judgment]."

DeLong's argument, however, is without merit. Fed.R.Civ.P. 56(e) specifically provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Sound Ship Building Co. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3d Cir.), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). Furthermore, Fed.R.Civ.P. 56(c) specifically provides that "[t]he adverse party *prior to*

---

neys fees. The court, however, did not determine the amount of the award but invited submissions from the parties on that point. When the district court has determined that a party is entitled to an award of attorneys fees but has not yet calculated the amount of the award, the court's order disposing of the merits of the case is, nevertheless, final and appealable. *Memphis Sheraton Corp. v. Kirkley*, 614 F.2d 131 (6th Cir. 1980); *Baughman v. Cooper-Jarrett, Inc.*, 530 F.2d 529, 531 n.2 (3d Cir.), *cert. denied sub nom. Wilson Freight Forwarding Co. v. Baughman*, 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976); *Hidell v. International Diversified Investments*, 520 F.2d 529, 532 n.4 (7th Cir. 1975). *See also Boeing Co. v. Van Gemert*, —— U.S. ——, —— n.5, 100 S.Ct. 745, 749 n.5, 62 L.Ed.2d 676 (1980). Accordingly, we find that we have jurisdiction over this appeal. Thus, the case before us is different from that presented in *Richerson v. Jones*, 551 F.2d 918, 922 (3d Cir. 1977), where the district court's judgment was completely silent on the plaintiff's motion for attorneys fees.

4. Among the evidentiary materials that DeLong submitted were affidavits by Charles O. Slemmons, the inventor of the device covered by the Slemmons patent, Richard Skeel, DeLong's purchasing agent, and David Varner and Alvin Davis, partners of DeLong's outside patent counsel who had prepared and prosecuted the application for Mr. Slemmons' patent.

DeLong asserts that the Slemmons and Skeel affidavits, in particular,
> set forth facts showing that the 54 grippers which the district court concluded were "sold" in June 1966 did not in fact embody the patented invention, that the invention was experimental at all times prior to the "critical date" of November 3, 1966, that neither General Tire nor DeLong had the capability of producing the patented two-piece gripper until mid-1967, and DeLong continued to purchase the older standard one-piece grippers until late 1967.

*the day of hearing* may serve opposing affidavits." (emphasis added). Thus, contrary to DeLong's assertions, Fed.R.Civ.P. 56 does require that such evidentiary material as DeLong believed relevant to indicate the existence of a genuine issue of material fact be presented at the hearing in the district court.

DeLong does not assert that the evidentiary material which it later sought to introduce on the motion for reargument was unavailable or unknown to it at the time of the original hearing. Nor does such reason appear in the record. The district court therefore stated:

The scope of Raymond's November, 1978 motion [for summary judgment] was clear on its face. If these affidavits and exhibits were to be advanced to meet the motion they should have been advanced then. If time were needed to gather and present them, an adjournment should have been requested.

It is important to observe that these affidavits and exhibits were in the possession of DeLong or available to it without seeking discovery from Raymond.

We accordingly cannot conclude that the district court abused its discretion in denying DeLong's motion for reconsideration.[5] Thus, our discussion of the remaining issues will be predicated upon the evidentiary material introduced prior to the district court's consideration of Raymond's motion for summary judgment.

### III.

The application for the Slemmons patent was filed on November 3, 1967. Thus, a sale of the covered invention prior to November 3, 1966, would run afoul of the provisions of 35 U.S.C. § 102(b).

35 U.S.C. § 102(b) provides:

A person shall be entitled to a patent unless

(b) the invention was patented or described in this or a foreign country or in public use or *on sale in this country, more than one year prior to the date of the application for patent in the United States.* (Emphasis added.)

DeLong asserts that the district court erred in holding that the invention covered by the Slemmons patent was "on sale" more than one year prior to the date of the patent application and was thus invalid.[6] On June 20, 1966, DeLong placed an order with General Tire for 54 rubber grippers. Some of these were delivered to DeLong on October 31, 1966. It is undisputed that this transaction constituted a sale. DeLong, however, asserts that Raymond failed to demonstrate that the 54 rubber grippers incorporated the Slemmons invention.

5. Other courts have similarly declined to receive affidavits not submitted in a timely fashion. *See, e. g., Jones v. Menard*, 559 F.2d 1282, 1285 n.5 (5th Cir. 1977) (court affirms district court's refusal to consider affidavit submitted at oral argument on motion for summary judgment because it runs afoul of Fed.R.Civ.P. 56(c) as well as "the trial court's inherent power to control the proceedings before it."); *Clarke v. Montgomery Ward & Co.*, 298 F.2d 346 (4th Cir. 1962) (district court's refusal to consider supplemental affidavit submitted nine days after hearing on motion for summary judgment was not abuse of discretion); *Surkin v. Charteris*, 197 F.2d 77 (5th Cir. 1952) (district court's denial of plaintiff's motion for leave to serve affidavits in opposition to motion for summary judgment two days after oral argument on the motion was not abuse of discretion where plaintiffs offered no excuse for the delay).

6. The policy underlying the "on sale" or "public use" bar to patentability was aptly stated by Mr. Justice Story in *Pennock & Sellers v. Dialogue*, 27 U.S. (2 Peters) 1, 19, 7 L.Ed. 327 (1829):

If an inventor should be permitted to hold back from the knowledge of the public the secrets of his invention; if he should for a long period of years retain the monopoly, and make, and sell his invention publicly, and thus gather the whole profits of it, relying upon his superior knowledge of the structure; and then, and then only, when the danger of competition should force him to secure the exclusive right, he should be allowed to take out a patent, and thus exclude the public from any further use than what should be derived under it during his fourteen years; it would materially retard the progress of science and the useful arts, and give a premium to those who should be least prompt to communicate their discoveries.

In support of its contention that the Slemmons invention had been on sale more than one year prior to the date of the patent application Raymond offered two items of proof. First, as Exhibit 2, it attached a purchase order dated June 20, 1966, from DeLong to General Tire for 54 "Rubber Grippers with separate slug and tube." Raymond's Exhibit 4 was an invoice from General Tire indicating that 12 of the grippers were shipped on October 11, 1966. Raymond also attached as Exhibit 3, DeLong's answers to certain interrogatories. Significantly, these stated that "[g]rippers of *the kind described* in United States Patent 3,422,505 [the Slemmons patent] and the General Tire and Rubber Company drawing 220–355 were first delivered to plaintiff in 1966." (Emphasis added.) DeLong, on the other hand, did not introduce any evidentiary material indicating that the grippers involved in the 1966 transaction were not the grippers covered by the Slemmons patent.

DeLong, argues that

[the] evidence, however, at most *proves only* that rubber grippers of *some* type were ordered and were shipped; it is devoid of any proof as to the precise nature and structure of the rubber grippers actually delivered. This lack of certain proof is critical, since the Slemmons patent does not purport to cover all rubber grippers, but only those two-piece grippers specifically adapted to overcome the "logical stress" conditions previously encountered. Thus, the ambiguous circumstances cited by Raymond did nothing to foreclose the very real possibility that the grippers delivered were *not* in fact the same as the grippers invented by Mr. Slemmons.

(Emphasis added.)

■ When considering a motion for summary judgment, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). *See Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 879 (3d Cir. 1972). Furthermore,

even when the material facts are not in dispute, summary judgment may be inappropriate when contradictory inferences may be drawn from the facts. *See United States v. Perry*, 431 F.2d 1020 (9th Cir. 1970). Thus, the moving party must demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir.) *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

■■ In order to sustain a finding of invalidity under the "on sale" bar of 35 U.S.C. § 102(b) it must be shown that the alleged invalidating sale was of a device substantially identical to that claimed under the terms of the patent. *See Red Cross Manufacturing Corp. v. Toro Sales Co.*, 525 F.2d 1135 (7th Cir. 1975). In the instant case Raymond bears the burden of demonstrating the identity of the items sold to DeLong by General Tire with the invention claimed in the Slemmons patent. Raymond must meet this burden even though DeLong elects not to introduce any affidavits in support of its position on this point.

■ The district court had before it more than adequate evidence to support its conclusion that there was no genuine issue of material fact as to whether the grippers sold to DeLong in 1966 incorporated the improvement covered by the Slemmons patent. DeLong's reply to Raymond's interrogatories is sufficient to show the necessary identity between the grippers sold to DeLong and the claims of the Slemmons patent. Thus, the district court had before it unchallenged evidence that the rubber grippers sold to DeLong were the same as those covered by the Slemmons patent. There was no evidentiary basis from which a contrary inference could be drawn. Having introduced an affidavit, an answer to an interrogatory, and other documents in support of its motion, we believe that Raymond sufficiently met its burden as the moving party.

Contrary to DeLong's assertion, we do not read Fed.R.Civ.P. 56 as requiring that the movant in a motion for summary judg-

ment introduce evidence supporting its position beyond any doubt. Rather, it is sufficient if it submits evidentiary material which indicates there is "no genuine issue of material fact." It then becomes the responsibility of the opposing party to introduce its own evidentiary material to the contrary. The court succinctly pointed this out in *Doff v. Brunswick Corp.*, 372 F.2d 801, 805 (9th Cir. 1966), *cert. denied*, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967):

> We cannot agree with appellant's contention that the movant has the burden of proving the invalidity not only of defenses which have been put into issue but also of every defense that could conceivably be raised. . . . To oppose the motion [for summary judgment] successfully, appellants were obliged to come forward and show the existence of a conflict.

Here DeLong offered no contrary evidence and the affidavit and exhibits submitted by Raymond are sufficient to support the court's finding. We therefore affirm the district court's holding that the rubber grippers sold to DeLong in 1966 incorporated the improvement covered by the Slemmons patent.

DeLong, however, advances two further contentions. It first asserts that Raymond failed to show that the sale was of the entire invention claimed in the Slemmons patent. Second, DeLong contends that, at the time of the sale, the Slemmons patent

had not yet been reduced to practice and thus that the sale could not have been of the completed invention.

The gist of DeLong's argument is that the patent claim describes "a combination of parts or components which includes an *annular channel structure* and an *annular gripper assembly* disposed between the flange members of the channel structure." [7] The rubber grippers shipped to DeLong apparently did not include an annular channel structure and annular gripper assembly. DeLong therefore urges that Raymond presented no evidence that the invention covered by the patent, which includes *an annular channel structure* and *an annular gripper assembly* disposed within such structure, was "on sale" prior to November 3, 1966. In reply, Raymond points out that the Slemmons patent is a so-called "Jepson" type patent. The name is derived from *Ex parte Jepson*, 1917 C.D. 62, 243 O.G. 525. The elements of such a patent claim are set forth at 37 C.F.R. § 1.75(e) and are:

(1) a preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known,

(2) a phrase such as 'wherein the improvement comprises' and

(3) those elements, steps and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

---

7. The Slemmons patent claims were stated as follows:

In a device for releasably securing a well-drilling platform or the like to a supporting leg, said assembly including an annular channel structure having a web portion and inwardly directed flange members and a radially expansible and contractible *annular gripper assembly disposed between the flange members* for frictionally engaging the supporting leg, the improvement which reduces high local stresses during expansion of the assembly and thereby reduces blowout frequency, said improvement *comprising a two-piece assembly including; an inflatable tube* of generally uniform wall thickness *disposed with its outer peripheral wall supported by the web portion of the channel structure, its upper and lower walls supported by the channel members* and its inner peripheral wall arranged to move radially inwardly upon inflation of said tube, said inner periph-

eral wall having a planar central portion merging with the upper and lower walls to define external convex surfaces at the upper and lower edges of said tube; and an *annular rubber-like radially-compressible slug* of greater radial dimension than the thickness of the tube wall *disposed inwardly of said tube and having its outer peripheral wall in engagement with the inner peripheral wall of said tube*, said outer peripheral wall of said slug having a planar central portion complementary to the planar central portion of the adjacent tube wall and having upper and lower lips projecting radially outward and defining concave surfaces at the upper and lower edges of said tube, whereby the tube contacts the full outer surface of said slug so as to permit uniform expansion of the tube when it is inflated thereby reducing high local stresses in said tube.
(Emphasis added).

In *Application of Simmons*, 312 F.2d 821, 824 (C.C.P.A. 1963) the Court of Customs and Patent Appeals stated:

> By using the so-called 'Jepson' form, employed in *Ex parte Jepson,* 1917 C.D. 62, 243 O.G. 525, appellant is relying on the subject matter following 'improvement' for novelty.

■ Novelty is the essence of and a key requirement for patentability. 35 U.S.C. § 101. *See Cridlebaugh v. Rudolph,* 131 F.2d 795, 800 (3d Cir. 1942), *cert. denied,* 318 U.S. 779, 63 S.Ct. 855, 87 L.Ed. 1147 (1943). The language before the word "improvement" merely recites the prior art for which the Slemmons invention is designed as an improvement. The patentable claim of the Slemmons patent consists of that which follows the word "improvement." The patentable claim does not include an annular channel structure and an annular gripper assembly. Rather, as noted above, the improvement comprises

> a two-piece assembly including; an inflatable tube . . . disposed with its outer peripheral wall supported by the channel members . . . and an annular, rubber-like radially-compressible slug of greater radial dimension than the thickness of the tube wall disposed inwardly of said tube and having its outer peripheral wall in engagement with the inner peripheral wall of said tube.

The invoice attached as an exhibit to Raymond's Motion for Summary Judgment specifically mentions "Rubber Grippers with Separate Slug and Tube." The invoice identifies precisely what appears to be covered by the patentable claims of the Slemmons patent. Read in conjunction with DeLong's answers to Raymond's interrogatories it appears to us that the district court had sufficient evidence upon which to conclude that there was no genuine issue of material fact and that the sale included the substantive invention claimed in the Slemmons patent.

■ We turn to DeLong's argument that at the time of the sale the Slemmons patent had not yet been reduced to practice, and thus the sale did not violate the "on sale" provision of 35 U.S.C. § 102(b). It is true, as DeLong asserts that "[t]he invention must be completed before sales efforts become a bar [to its patentability]." *Austin v. Marco Dental Products, Inc.,* 560 F.2d 966, 969 (9th Cir. 1977), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978). Its position is that the invention is incomplete until it has been reduced to practice.

■ A reduction to practice "is not achieved until the inventor has sufficiently tested the prototype to prove its utility and to determine that no further refinements are necessary." *In Re Yarn Processing Patent Validity Litigation,* 498 F.2d 271, 279 (5th Cir.), *cert. denied sub nom., Sauquoit Fibers Co. v. Leesona Corp.,* 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974). Considerable confusion exists in the cases as to when an invention has been reduced to practice. It is a legal term of art and the apparent conflict has been ascribed to the differing definitions of the term. *See Id.* 498 F.2d at 282. Even when a working model has been produced, this does not necessarily connote a "reduction to practice" within the meaning of patent law. Thus, "[w]hile it is true that reduction to practice does not require a device embodying the invention to be mechanically perfect, or a commercial success, its practical efficacy and utility must be demonstrated." *Van Auken v. Cummings,* 49 F.2d 490, 492 (C.C.P.A. 1931). An inventor is therefore allowed a period of time in which to experiment with and perfect his invention. Such "experimental use" does not violate the "on sale" provisions of 35 U.S.C. § 102(b). *See City of Elizabeth v. American Nicholson Pavement Co.,* 97 U.S. 126, 24 L.Ed. 1000 (1878).[8]

---

8. In explaining experimental or public use, the Court stated:

> When the subject of invention is a machine, it may be tested and tried in a building, either with or without closed doors. In either case, such use is not a public use, within the meaning of the statute, so long as the inventor is engaged, in good faith, in testing

■ An inventor is permitted to experiment on his invention after its reduction to reality without violating the "on sale" bar so long as "the experimentation is his primary objective and it is reasonably necessary for demonstrating the device's utility and its lack of need for further refinement." *In Re Yarn, supra*, 498 F.2d at 282. When, however, the inventor has chosen to sell his invention more than one year prior to the date of the patent application the presumption is, in the absence of evidence to the contrary, that the experimental period is over and that the invention is suitable for commercial exploitation. The burden of proof then shifts to the inventor, for as the court stated in *Koehring Co. v. National Automatic Tool Co.*, 362 F.2d 100, 104 (7th Cir. 1966), "once a single use of an operative device embodying the invention prior to the critical date has been shown the inventor must carry the burden of proving that the use was part of a bona fide program of experimentation." On a motion for summary judgment, however, once the "experimental use" defense is raised by the patentholder, the burden is on the alleged infringer to demonstrate that no "genuine issue of material fact" exists with respect to such defense and that he is entitled to judgment as a matter of law. *See, e. g., Kelly Manufacturing Co. v. Lillisten Corp.*, 180 USPQ 364 (E.D.N.C. 1973); *Bird v. Zimmerman Fur Institute, Inc.*, 294 F.Supp. 202 (S.D. Ohio 1968).

■ As we discussed above, we are persuaded there was sufficient evidence before the district court for it to properly conclude that no genuine issue of material fact existed as to whether the rubber grippers sold to DeLong by General Tire prior to November 3, 1966, embodied the patentable claims of the Slemmons patent. Therefore, the presumption is that the invention covered by the Slemmons patent had, at that time, been reduced to practice and was suitable for commercial exploitation. The burden was thus shifted to DeLong, even on a motion for summary judgment, to at least raise the possibility that the transaction had been entered into for experimental purposes. The shift of burden and the duty to come forward with possible contradiction of proof is the essence of Fed.R.Civ.P. 56. "Under Rule 56, F.R.Civ.P., if defendants make a showing that would entitle them to judgment unless contradicted, the plaintiffs then have a duty to show that such contradiction is possible. They cannot rest upon the allegations of their complaint." *First National Bank in Billings v. First Bank Stock Corp.*, 306 F.2d 937, 943 (9th Cir. 1962). The whole purpose of Rule 56 would be frustrated if they could. *See Doff v. Brunswich Corp., supra*, 372 F.2d at 805. DeLong, however, did not raise the experimental use defense before the district court. Nor did any of the evidentiary materials submitted to the district court indicate that the transaction was for anything other than commercial purposes.[9]

its operation. He may see cause to alter it and improve it, or not. His experiments will reveal the fact whether any and what alterations may be necessary. . . . and no one would say that such a use, pursued with a *bona fide* intent of testing the qualities of the machine, would be a public use, within the meaning of the statute. So long as he does not voluntarily allow others to make it and use it, and so long as it is not on sale for general use, he keeps the invention under his own control, and does not lose his title to a patent.

It would not be necessary, in such a case, that the machine should be put up and used only in the inventor's own shop or premises. He may have it put up and used in the premises of another, and the use may inure to the benefit of the owner of the establishment. Still, if used under the surveillance of the inventor, and for the purpose of enabling him to test his machine, and ascertain whether it will answer the purpose indicated, and make such alterations and improvements as experience demonstrates to be necessary, it will still be a mere experimental use, and not a public use, within the meaning of the statute. *City of Elizabeth v. American Nicholson Pavement Co., supra*, 97 U.S. at 134–35.

9. In *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 433 (9th Cir. 1973) the Court of Appeals for the Ninth Circuit held:

A sale or an offering for sale precludes any inquiry into the experimental nature of the sale *unless* the contract of sale or the offering for sale contains an express or clearly implied condition that the sale or offering is made primarily for experimental use.

DeLong asserted in its brief in this court that, even though it had chosen not to raise the "experimental use" defense, Raymond was still required to demonstrate, on its motion for summary judgment, that the transaction had not been for experimental purposes. As we have already indicated, we believe this argument flies in the face of established case law and is without merit. Indeed, DeLong apparently agrees, conceding at oral argument that it had failed to meet its burden on this issue.

██ Thus, we agree with the district court that no genuine issue of material fact exists as to whether the invention covered by the Slemmons patent had been reduced to practice and commercially exploited more than one year prior to the date of the Slemmons patent application. We will therefore affirm the judgment of the district court holding the Slemmons patent invalid for violating the "on sale" provisions of 35 U.S.C. § 102(b).

### IV.

We now turn to the district court's ruling that the Slemmons patent was obtained through the perpetration of fraud on the U.S. Patent Office. As part of every patent application the inventor is required to execute an oath stating, *inter alia*, that the invention was not on sale in the United States more than one year prior to the date of the application. 35 U.S.C. § 115. *See* 37 C.F.R. § 1.65(a)(1). Pursuant to this requirement, Charles O. Slemmons, inventor of the invention covered by U.S. Patent No. 3,422,505, executed an oath in which he stated: "I do not know and do not believe that this invention was ever . . . on sale in the United States for more than one year prior to this application." On the basis of its finding that the invention covered by the Slemmons patent had in fact been on sale in the United States more than one year prior to the date of the patent application, the district court concluded that

*But see In re Yarn Processing Patent Validity Litigation, supra.* We need not address here the appropriateness of such a rule. We note, however, that neither the sale agreement nor

said patent was procured by fraud on the United States Patent Trademark Office at the time of the filing of the application for said patent No. 3,422,505, or during the prosecution thereof, the information of which they were aware as to the said invention being on sale more than one year prior to the application thereof as aforesaid.

DeLong argues that merely because there was an invalidating prior sale of the Slemmons invention, this is an insufficient reason to find fraud. Rather, DeLong urges that there must also be evidence of intent to deceive or gross negligence amounting to a reckless and willful disregard of the truth. DeLong contends that, because no such evidence was submitted to the court in support of Raymond's motion for summary judgment, it was error for the district court to hold there was fraud in the application for the Slemmons patent.

Raymond, on the other hand, replies that the evidence before the district court was sufficient to establish "that the Slemmons oath was false and that DeLong knew or should have known that such oath was false since it was the purchaser of the 54 grippers in question and therefore knew that the Slemmons application was barred by § 102(b)."

██ We set forth the applicable rule for the quantum of evidence necessary to support a finding of patent fraud in *In re Multidistrict Litigation Involving Frost Patent*, 540 F.2d 601, 603–04 (3d Cir. 1976).

[T]he burden of proof in a patent fraud case is that the fraud must be proved clearly, unequivocally and convincingly.

. . . .

[A] finding of fraud on the Patent Office depends on subsidiary findings that the omission or misrepresentation was material, and that the patentee possessed the intent to defraud, or that 'willfulness or recklessness indicating a disregard for his duty of frankness . . . .' *Xerox*

any of the other evidentiary material contains any indication that the sale was for any purpose other than commercial use.

*Corp. v. Dennison Manufacturing Co.*, 322 F.Supp. 963, 969 (S.D.N.Y.1971).

In *Xerox* in turn the court stated:

Notwithstanding this thorough lacing of their papers with claims of fraud, defendants ambivalently contend that proof of material misstatements or non-disclosures before the Patent Office, standing alone and without establishment of an intent to deceive or of recklessness, would amount to unclean hands. We disagree. The law is to the contrary.

322 F.Supp. at 968.

Here Raymond appears to be arguing, and the district court apparently concluded, that the mere misstatement of a material fact on the patent application is, by itself, sufficient to support a finding of fraud. Fraud requires something more. There must be an affirmative intent to deceive or at least a gross negligence or recklessness in misrepresenting the truth. Supporting this view in an analogous situation is *Huszar v. Cincinnati Chemical Works, Inc.*, 172 F.2d 6, 11 (6th Cir. 1949) where the court stated "the mere fact that the appellant swore to affidavits that there had been no public use of his invention for more than one year prior to his application, does not seem to us to be enough to establish such intent."

■ A determination of fraud usually rests on a determination and reconciliation of conflicting facts, and it is not readily resolved on a motion for summary judgment. "Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *Pfizer, Inc. v. International Rectifier*, 538 F.2d 180, 185 (8th Cir. 1976), *cert. denied*,

429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). We hold that without more the mere misstatement in the patent application that there had not been a prior sale of the invention for more than one year prior to the date of the application, particularly when the circumstances pertaining to the transaction required a sifting of the facts, will not support a finding of fraud, much less indicate that there is no genuine issue of material fact. Thus, we conclude that it was error to enter summary judgment holding that the Slemmons patent was procured by fraud.

## V.

■ *A fortiori* if the evidence does not support the district court's finding of fraud as to the Slemmons patent, it does not support the court's application of the "unclean hands" doctrine in dismissing the action as to the Lucas patent.[10] Accordingly, the judgment of the district court dismissing the amended complaint charging an infringement of the Lucas patent will be reversed.

## VI.

The judgment of the district court holding the Slemmons patent invalid will be affirmed. The district court's order holding that the Slemmons patent was procured by fraud and dismissing the amended complaint as to the Lucas patent will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Each party to bear its own costs.

10. The district court's decision to dismiss De-Long's claims as to the Lucas patent because of the alleged fraud in obtaining the Slemmons patent rested on its perception of the relationship between the two patents. The court noted that "[b]oth patents are for gripping devices" whose "function is essentially the same," *i. e.*, the raising and lowering of marine platforms. In light of our disposition of the case, we need not decide whether the relationship between the two patents is sufficient to merit the application of the "unclean hands" doctrine. We note, however, that the relevant relationship is not between the two patents but between the misconduct and the particular patent. Thus, "misconduct in the abstract, unrelated to [the] claim which it is asserted as a defense, does not constitute unclean hands." *Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir. 1963). *In In re Multidistrict Litigation Involving Frost Patent*, 540 F.2d 601 (3d Cir. 1976), for instance, where the district court found fraud as to one of two claims covered by a patent, we affirmed the application of the "unclean hands" doctrine only as to that claim which had been fraudulently advanced.