**In re EXCELLO PRESS, INC., Debtor.**

**EXCELLO PRESS, INC., Plaintiff,**

**v.**

**BOWERS, INC., et al., Defendants.**

**Bankruptcy No. 85 B 13649.**
**Adv. No. 87 A 907.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 17, 1989.

See also, D.C., 90 B.R. 335.

Steven V. Towbin, Scott Schreiber, Karen Walin, Towbin & Zazove, Ltd., Chicago, Ill., for plaintiff-debtor.

Jay A. Frank, Frank & Melamed, Ltd., Chicago, Ill., for defendant-creditor, La-Salle Messinger Paper Co.

## MEMORANDUM AND ORDER

THOMAS JAMES, Bankruptcy Judge.

In count IV of this adversary proceeding, Excello Press, Inc., plaintiff-debtor, seeks to avoid certain transfers to LaSalle Messinger Paper Company, defendant-creditor, as preferences under Bankruptcy Code § 547(b) [11 U.S.C. § 547(b)] and now has moved for summary judgment. The motion will be denied. Excello had asked the court to apprise the parties as to what facts existed without substantial controversy as provided by Bankruptcy Rule 7056(d) [Fed.R.Civ.P. 56(d)] if the court were to deny the motion. This the court will do.

The material facts that exist without substantial controversy are:

Excello prior to filing its chapter 11 petition on October 11, 1985, was engaged in the printing business. LaSalle had supplied paper to Excello for fifteen years and during the two years before Excello's chapter 11 filing had sold Excello paper on 25 to 30 occasions.

Within 90 days of filing its case Excello made transfers of $140,693.95 to LaSalle. At each time Excello transferred money to LaSalle during these 90 days, LaSalle was a creditor of Excello.

Each of Excello's transfers of money to LaSalle was made in satisfaction of Excello's pre-existing debt to LaSalle as a result of Excello's prior purchases of goods from LaSalle. Subsequent to Excello's last transfer to LaSalle, but prior to the filing of the chapter 11 case, La-Salle provided Excello with goods having an aggregate value of $17,304.05.

On or about April 30, 1985 Excello ordered 7,200 sheets of paper from LaSalle. Excello on or about May 3, 1985, received these sheets on Excello purchase order no. 5760 and LaSalle invoice no. 4843.

On or about April 1, 1985, Excello ordered 60,900 pounds of paper from La-Salle. Excello on or about May 6, 1985 received these pounds on Excello purchase order no. 5621 and LaSalle invoice no. 8333B.

Excello on or about July 12, 1985 sent LaSalle its check no. 32176 in the amount of $11,511.55. Excello check no. 32176 cleared Excello's bank account on August 1, 1985 causing a transfer of Excello's property to LaSalle. This amount was applied toward payment of LaSalle invoice nos. 4843 and 8333B. 88 days elapsed between May 6, 1985, the date the paper was delivered to Excello, and August 1, 1985, the date Excello transferred property to LaSalle on account of LaSalle invoice nos. 4843 and 8333B.

On or about April 30, 1985, Excello ordered 146,000 pounds of paper from La-Salle. Excello on or about May 15, 1985 received this paper pursuant to Excello purchase order no. 5744 and LaSalle invoice no. 8346B. Excello on or about August 2, 1985 sent LaSalle its check no. 32381 for $63,519.58. Excello check no. 32381 cleared Excello's bank account on August 6, 1985 causing a transfer of Excello's property to LaSalle. This amount was applied toward payment of LaSalle invoice no. 8346B. 79 days elapsed between May 15, 1985, the date the paper was delivered to Excello, and August 2, 1985, the date Excello transferred property to LaSalle on account of LaSalle invoice no. 8346B.

On June 9, 1985, Excello ordered 150,000 pounds of paper from LaSalle. Excello on or about June 21, 1985 received these pounds on Excello's purchase order no. 5860 and LaSalle's invoice no. 8925P. On

or about September 20, 1985, Excello sent LaSalle its check no. 32778 in the amount of $65,662.82. Excello check no. 32778 cleared Excello's bank account on September 24, 1985 causing a transfer of Excello's property to LaSalle. This amount was applied toward payment of LaSalle invoice no. 8925P, less the amount as reflected in debit memo no. 1492. 94 days elapsed between June 21, 1985, the date of LaSalle invoice no. 8925P dated September 24, 1985, and the date that Excello transferred property to LaSalle on account of LaSalle invoice no. 8925P.

At the time that this case was commenced, LaSalle was an unsecured creditor in the amount of $17,304.05. LaSalle has filed an unsecured claim in the amount of $17,304.05 in this case. Excello claims preferential transfers of $123,389.90.

To avoid any transfer to LaSalle under 11 U.S.C. § 547(b) Excello must show that the transfer was made to or for LaSalle's benefit for or on account of an antecedent debt that Excello owed before the transfer was made, while Excello was insolvent, on or within 90 days before the date of the filing of its petition, that enabled LaSalle to receive more than it would have received if this were a chapter 7 case and the transfer had not been made. The court finds and concludes from the foregoing facts that Excello's transfers totaling $123,389.90 were to and for LaSalle's benefit, for and on account of an antecedent debt that Excello owed before the transfers were made, and that these transfers were made within 90 days before October 11, 1985, the date on which Excello filed its chapter 11 petition.

There remain the issues under Code § 547(b) as to whether Excello was insolvent at the times the transfers were made [Code § 547(b)(3) ] and whether LaSalle has received more than it would have received under a chapter 7 liquidation [Code § 547(b)(5) ]. As to the issue of insolvency Code § 547(f) provides that for the purposes of avoiding preferential transfers, Excello is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of its petition. Under Fed.R.Evid. 301 LaSalle must go forward with evidence to rebut or meet this presumption. This LaSalle has not done. Therefore, Excello gains the day and meets its burden of persuasion. As noted in *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1579 (Fed.Cir. 1984):

> A presumption does not enjoy the status of evidence. If a finding on the evidence is made that a presumed fact has been effectively rebutted, the presumed fact ceases to exist. It does not linger on to be weighed against the evidence. If evidence is provided which falls short of meeting the threshold of rebuttal, the presumed fact retains its viability. Hence, the standard to establish the nonexistence of the presumed fact may be critical.

It was critical in this motion for summary judgment that LaSalle rebut or meet this presumption of insolvency. As noted, LaSalle has not done so. The court finds and concludes that Excello was insolvent during the 90 days immediately preceding its filing. This is a material fact that exists without substantial controversy.

The parties did spend much time arguing the effect on the insolvency issue of Excello's unaudited financial summaries of assets and liabilities that Excello submitted. Of course, these summaries are not admissible evidence on the insolvency issue. Insolvency under Code § 101(31) will be found where the sum of a debtor's debts is greater than the value of its property, at a fair valuation. Excello's summaries place a "book value" on its assets. LaSalle has properly questioned the propriety of the use of book values to show "fair valuation."

Fair value, in general, is the reasonable estimate of what can be realized from a debtor's assets converting them into, or reducing them to, cash, under carefully guarded if not idealized conditions. 2 Collier on Bankruptcy § 101.31[4], p. 101–84 (15th ed. 1988). Book values are not tantamount to fair value within the meaning of

the Bankruptcy Code. *See* 2 Collier on Bankruptcy § 101.31, p. 101–90 (15th ed. 1988). The court agrees with LaSalle's observation that book value is nothing more than the figure appearing on the company's books resulting from a particular accounting treatment and may have no relation at all to market or fair value. Indeed, the plant and equipment are valued at cost less accumulated depreciation. The resulting figure may or may not give the fair value of the plant and equipment.

This court disagrees with Excello's assertion that *In re Reliable Mfg. Corp.*, 703 F.2d 996 (7th Cir.1983), controls the case at bar. We would call Excello's attention to the observation of Circuit Judge Cudahy on p. 1002 that although Libco argued that the data contained in certain financial statements was unreliable Libco submitted no affidavits to that effect, as is necessary to defeat a motion for summary judgment. Here, LaSalle did submit affidavits to contest the validity of the balance sheet valuations. Nor does *Telegraph S & L Assn. v. Federal S & L Ins. Corp.*, 564 F.Supp. 880 (N.D.Ill.1982), *aff'd*, 703 F.2d 1019 (7th Cir. 1983), control, for the book net worth method of evaluating assets is not valid to obtain their "fair value." However, these blandishments cannot overcome the fact that LaSalle did not submit any evidence to meet or rebut the presumption of Excello's insolvency under Code § 547(f). The court has discussed this evidence because of the parties' use of the summaries in arguing the chapter 7 distribution issue.

■ Excello's book value figures must also be rejected as a basis of determining whether LaSalle has received more than it would have received in a chapter 7 distribution. Valuation under Code § 547(b)(5) must be made in light of a chapter 7 distribution. This means liquidation. Liquidation valuation assumes that there is a willing buyer who will not pay more than a liquidation price for the debtor's assets. Certainly, a liquidation may be a sale of a debtor's entire business as an ongoing concern. Or more probably, a sale of item by item. Book value for the reasons previously noted may or may not reflect what the willing buyer looking for a "liquidation" bargain might pay. The issue of whether LaSalle has received more than it would have in a chapter 7 distribution is one involving material facts for which there must be a trial.

■ Excello also has the burden because of its motion for summary judgment to show that there is no genuine issue of material fact on LaSalle's affirmative defenses under Code § 547(c)(2). LaSalle avers that Excello's transfers were made in the ordinary course of business or financial affairs of Excello and LaSalle and according to ordinary business terms. The court does find and conclude that these transfers were in payment of debts that Excello incurred in the ordinary course of Excello's business or financial affairs with LaSalle.

To prove that its transfers to LaSalle were nonordinary Excello relies on the holding in *Matter of Xonics Imaging Inc.*, 837 F.2d 763, 767 (7th Cir.1988), that the conduct of a debtor, after becoming insolvent, in failing to make payments within the time required by his contract is presumptively nonordinary. However, this court notes that the *Xonics Imaging* case was not one where the parties to a contract [or lease] adopted an extra-contractual practice that became the ordinary course of business between them (p. 767). There is not one contract between Excello and LaSalle before the court, but a series of transactions covering 15 years. There is evidence only as to several of the transactions. The *Xonics Imaging* presumption may not stand.

Both parties have cited *Doff v. Brunswick Corporation*, 372 F.2d 801 (9th Cir. 1967), cert. denied, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967), in support of each's position on whether there are triable issues on the questions of ordinary course of business between the parties and of ordinary business terms. There is no doubt that Excello must show that no genuine issue of material fact exists as to LaSalle's affirmative defenses. As noted by the 9th Circuit in the *Doff* opinion at page 804, affidavits of parties opposing summary judgment should be indulgently

treated. The affidavit of Cullen Braxton that LaSalle filed in this adversary proceeding states:

5. LaSalle had been selling paper to Excello since approximately 1970. During the two year period preceding the bankruptcy filing, LaSalle engaged in 25 to 30 transactions with Excello wherein paper was sold by LaSalle to Excello. Eight of these transactions (including the three transfers involved in this action) involved sales of at least $50,000.00 in paper to Excello.

6. LaSalle's payment terms with Excello and most other customers called for payment to be made by the 31st day after invoice date and provided for service charges. In only 3 of the 25 to 30 transactions mentioned above, did Excello make payment within the 31 day period. Excello's payments extended as far out as 126 days after date of invoice and many (approximately 19) exceeded 60 days and even 70 days (13 transactions).

7. In the course of the vendor-vendee relationship described above, and pursuant to established and consistent business terms developed over several years, LaSalle sold paper to Excello in May and June, 1985. Payments for these purchases were made by Excello during the 90 day preference period and it is these payments sought to be recovered in this action.

8. LaSalle took no extraordinary or unusual actions to collect the payments during the 90 day preference period, and took no abnormal action whatsoever to gain an advantage over other creditors of Excello. The timing, amount, method and terms of, and all other circumstances surrounding, the payments were consistent with the past dealings between LaSalle and Excello.

Thus, for the purposes of argument LaSalle has alleged facts sufficient to bring the affirmative defenses into issue. Excello has not refuted Braxton's assertions of what was the ordinary course of business or financial affairs between LaSalle and Excello or as to whether the transfers under consideration were made according to ordinary business terms.

Also, this court believes that it should follow the admonition in *Xonics Imaging* to give weight to the parties' prior course of dealings in determining the ordinary course of business between them (p. 765), particularly where there has been 15 years of dealings, including two recent years with 25 to 30 transactions.

Thus, there remain to be tried the issues of whether Excello's transfers enabled LaSalle to receive a greater percentage of its claim than it would have received under a chapter 7 distribution [Code § 547(b)(5)]; whether these transfers were made in the ordinary course of business or financial affairs of Excello and LaSalle [Code § 547(c)(2)(B)]; and whether these transfers were made according to ordinary business terms [Code § 547(c)(2)(C)].

Therefore, the motion of Excello Press, Inc., plaintiff-debtor, for summary judgment is denied. The court will conduct a trial on the issues of whether Excello's transfers enabled LaSalle Messinger Paper Company, defendant-creditor, to receive a greater percentage of its claim than it would have received under a chapter 7 distribution [Code § 547(b)(5)]; whether these transfers were made in the ordinary course of business or financial affairs of Excello and LaSalle [Code § 547(c)(2)(B)]; and whether these transfers were made according to ordinary business terms [Code § 547(c)(2)(C)].