**Dimitrios AVRAMIDIS et al., Plaintiffs,**

v.

**ATLANTIC RICHFIELD COMPANY et al., Defendants.**

Civ. A. No. 85–3972–G.

United States District Court,
D. Massachusetts.

Nov. 27, 1985.

Preliminary Injunction Nov. 29, 1985.

Myles Jacobson, Robert Weiner, Boston, Mass., for plaintiffs.

Richard Powers, Parker, Coulter, Daley & White, Boston, Mass., for defendants.

Brian T. Kenner, Nutter, McClennen & Fish, Boston, Mass., for Shell Oil Co.

## MEMORANDUM AND ORDER FOR PRELIMINARY INJUNCTION

GARRITY, District Judge.

This case involves the termination of 29 gas station franchises in Massachusetts. Plaintiffs are 25 individuals and four partnerships who operate these gas stations in accordance with franchise agreements with the Atlantic Richfield Company ("Arco"). They challenge the propriety of Arco's termination, asserting that it does not conform to the strictures of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 et seq.[1] Pursuant to the PMPA, 15 U.S.C. § 2805(b)(2), plaintiffs now seek a preliminary injunction enjoining Arco from terminating their franchises and ordering Arco to provide plaintiffs with the right of first refusal to purchase from Arco the real estate or leasehold upon which their gas stations are located.

On May 21, 1985, Arco sent notices to the plaintiffs that it was withdrawing from the gasoline market east of the Mississippi River and terminating its franchise agreements in that market area effective November 30, 1985.[2] Arco's decision to withdraw was made at an April 28, 1985 Arco Board of Directors meeting, more than a month after Arco had renewed one of plaintiffs' franchises. A review of the six-month period ending March 1985 revealed

---

1. Plaintiffs also seek to have the court enjoin enforcement of their agreements with Shell Oil Company on the grounds of unconscionability. In light of the disposition of plaintiffs' motion under the PMPA, the court does not address this question. Moreover, consideration of this question may be precluded by the PMPA itself. See 15 U.S.C. § 2806.

2. The facts stated in this and the next paragraph come from defendants' affidavits and are found by the court for purposes of the pending motion only.

that, due to the recent oil glut, Arco's profits in this market area were at their lowest since 1981 despite an extensive capital improvements plan. In addition, Arco's withdrawal in this area was part of a larger restructuring plan commenced in April 1985 in an effort to fend off the takeover bids plaguing other major oil companies.

Arco entered into a purchase and sale agreement with the Shell Oil Company ("Shell") on July 19, 1985 for the properties currently leased by the plaintiffs. In early September, 1985 Shell sent each of the plaintiffs a dealer agreement, a motor fuel station lease, and a notice concerning Shell's Variable Rent Program ("VRP"). The dealer agreement provided for the franchisee's use of Shell products. The motor fuel station lease set forth the rents Shell would charge the franchisee for the use of the premises over a three-year period. As the accompanying notice on the VRP explained, however, Shell contemplated that it would offer its VRP to the former Arco franchisees after the first six months of their Shell leases. The VRP

provides for rent reductions based on a franchisee's gasoline sales. A letter accompanying these documents informed the plaintiffs that if they did not execute the dealer agreement and motor fuel station lease within fourteen days of receipt, their failure to do so would be construed as a rejection of Shell's offer. Each plaintiff subsequently signed these agreements.[3]

The PMPA provides the ground rules for the franchisor's termination of a gas station franchise. The termination at issue here, a termination because of withdrawal from the market, is specifically governed by 15 U.S.C. § 2802(b)(2)(E).[4] This subsection provides that a franchisor may terminate a franchise if it decides to withdraw from the market area as long as that decision was made "in good faith and in the normal course of business"; it was "made after the date such franchise was entered into or renewed", and it was "based upon the occurrence of changes in relevant facts and circumstances after such date." 15 U.S.C. § 2802(b)(2)(E)(i). Furthermore, if,

**3.** At Arco's request, Shell also sent each plaintiff a mutual termination agreement. This document set forth an agreement between Arco and the franchisee to terminate their franchise relationship provided that the franchisee's franchise agreement with Shell commenced on or before November 30, 1985. Only four plaintiffs signed this mutual termination agreement.

**4.** § 2802(b) provides in relevant part:
(2) For purposes of this subsection, the following are grounds for termination of a franchise relationship—
....
(E) In the case of any franchise entered into prior to June 19, 1978, and in the case of any franchise entered into or renewed on or after such date (the term of which is 3 years or longer, or with respect to which the franchisee was offered a term of 3 years or longer), a determination made by the franchisor in good faith and in the normal course of business to withdraw from the marketing of motor fuel through retail outlets in the relevant geographic market area in which the marketing premises are located, if—
(i) such determination—
(I) was made after the date such franchise was entered into or renewed, and
(II) was based upon the occurrence of changes in relevant facts and circumstances after such date;

(ii) the termination or nonrenewal is not for the purpose of converting the premises, which are the subject of the franchise, to operation by employees or agents of the franchisor for such franchisor's own account; and
(iii) in the case of leased marketing premises—
(I) the franchisor, during the 180-day period after notification was given pursuant to section 2804 of this title, either made a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interests in such premises, or, if applicable, offered the franchisee a right of first refusal of at least 45 days duration of an offer, made by another, to purchase such franchisor's interest in such premises; or
(II) in the case of the sale, transfer, or assignment to another person of the franchisor's interest in such premises in connection with the sale, transfer, or assignment to such other person of the franchisor's interest in one or more other marketing premises, if such other person offers, in good faith, a franchise to the franchisee on terms and conditions which are not discriminatory to the franchisee as compared to franchises then currently being offered by such other person or franchises then in effect and with respect to which such other person is the franchisor.

as in this case, the franchisor seeks to sell to a third party, here Shell, its interest in the property upon which the franchise is located, said third party must offer, "in good faith, a franchise to the franchisee on terms and conditions which are not discriminatory to the franchisee as compared to franchises then currently being offered by such other person or franchises then in effect and with respect to which such other person is the franchisor." 15 U.S.C. § 2802(b)(2)(E)(iii).

Plaintiffs seek to prevent Arco from terminating their franchises, asserting that the termination does not conform to § 2802(b)(2)(E). They have moved for a preliminary injunction pursuant to the PMPA, 15 U.S.C. § 2805(b)(2),[5] under which the court is instructed to grant a preliminary injunction upon the franchisee's showing that (i) the franchise has been terminated and (ii) "there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation." 15 U.S.C. § 2805(b)(2)(A). Before ordering a preliminary injunction, the court must also determine that, on balance, the hardship that the franchisee will suffer if such relief is not granted outweighs the hardship the franchisor will suffer if it is granted. 15 U.S.C. § 2805(b)(2)(B).

It is undisputed that the franchises have been terminated. It remains for plaintiffs to demonstrate that this case raises "sufficiently serious questions" to justify the granting of a preliminary injunction. While somewhat less exacting than the "likelihood of success" standard generally applicable to preliminary injunctions, the PMPA's standard of "sufficiently serious questions" does require that the plaintiffs demonstrate "a reasonable chance for success on the merits." *Mobil Oil Corp. v.*

*Vachon,* D.Mass.1983, 580 F.Supp. 153, 159. Plaintiffs contend that they have raised two issues concerning the propriety of Arco's termination which satisfy this standard.

First, they argue that Arco's decision to withdraw from the market was not made in good faith and that it was made before Arco had renewed several of plaintiffs' franchises. Plaintiffs present scant proof of this charge. Specifically, they note that Arco sent them notices of termination only a few months after it had reached franchise agreements with several of the plaintiffs. Plaintiffs know of no events during this intervening period which would occasion a withdrawal. Furthermore, plaintiffs allege that it is unlikely Arco would have reached such a significant decision in such a short period of time. However, these allegations are offset by the detailed affidavit of Arco's executive president. The affidavit sets out the circumstances leading to Arco's decision to withdraw, and it persuades the court that the plaintiffs do not have a reasonable chance of success in proving that Arco's withdrawal was made in bad faith.

Plaintiffs also challenge Arco's termination on the grounds that the successor franchisor, Shell, has not offered them a franchise on non-discriminatory terms. This challenge focuses on the VRP. Shell refuses to disclose the terms of the VRP on the ground that it is a trade secret. Plaintiffs contend that the VRP is an integral component of Shell's offer of a franchise. In fact, plaintiffs assert that if Shell did not offer them the VRP, it would be discriminating against them relative to the other Shell franchisees who enjoy the rent reductions provided by the VRP. How-

---

**5.** § 2805(b) provides in relevant part:

(2) Except as provided in paragraph (3), in any action under subsection (a) of this section, the court shall grant a preliminary injunction if—

(A) the franchisee shows—

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

ever, plaintiffs also assert that since Shell refuses to explain how the VRP is calculated, it has not offered them a franchise on sufficiently definite terms. Given Shell's lack of specificity, in fact, plaintiffs conclude that it has not made an offer of a franchise.

In response to these arguments, Shell submits that the VRP is an unilateral and voluntary offer on its part and not an amendment to the lease, noting that the lease agreements it sent to plaintiffs provided fixed rental terms, and it is these terms which constitute Shell's offer, not the VRP. Moreover, it asserts that the agreements it sent to plaintiffs are the same type of agreements currently in force with its dealers nationwide. Therefore, in Shell's view, it has made a nondiscriminatory offer whose terms are definite and enforceable.

The court concludes that with regard to this issue, plaintiffs have presented a "sufficiently serious question" within the meaning of § 2805(b)(2). On the present record it appears that plaintiffs have a reasonable chance of proving that the VRP constituted a part of Shell's offer of a franchise. Not only was a notice of the VRP sent to plaintiffs in a packet containing Shell's dealership and lease agreements, but plaintiffs' affidavits also establish that oral representations were made to them that the VRP would be employed to calculate their rent. Furthermore, Shell concedes that the VRP has been offered to plaintiffs, albeit unilaterally. Whether the VRP is a modification of the rental term or an independent term seems irrelevant to the central question of whether it constitutes part of Shell's offer of a franchise. Whether it is a rental term or otherwise, the VRP will have a substantial effect on the amount a franchisee pays for doing business on the franchisor's premises. Hence, the court considers the VRP to be a part of the franchise offer.

As such, the VRP undermines the offer's validity. The VRP offers rent reductions on the basis of a franchisee's gasoline sales, but Shell does not specify how such reductions are to be determined. Absent a "practicable method of determination," the offer is "too indefinite and uncertain for enforcement." A. Corbin, *Corbin on Contracts*, § 97 (1963). That Shell reserves the right to vary the rents it charges in accordance with some type of VRP is not in itself defective, see *Corbin on Contracts*, § 98, but the failure to specify how the rent will be reduced does appear to render the offer invalid. Cf. *Meyer v. Amerada Hess Corp.*, D.N.J.1982, 541 F.Supp. 321, and *Palmieri v. Mobil Oil Corp.*, D.Conn.1982, 529 F.Supp. 506 (rental formulas disclosed and variable rent program upheld).

Having determined that a "sufficiently serious question" exists, the court must now determine whether a balance of the hardships favors granting the preliminary injunction. As Congress has recognized, "Presumably the imposition of any injunctive relief upon the franchisor imposes a hardship." S.Rep. No. 731, 95th Cong. 2d Sess. 41, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 899. In the instant case, a preliminary injunction would enjoin Arco from terminating 29 franchises in a market area from which it seeks to withdraw due to lack of profitability. Additionally, although unsupported by affidavit, Arco and Shell contend that a preliminary injunction would disrupt their agreement concerning the sale of 360 Arco stations on the east coast.[6]

Plaintiffs argue that they will suffer hardship if the termination is not enjoined because Shell gasoline is currently more expensive than the Arco gasoline they are now selling. They contend that they will lose substantial business if forced to sell Shell. Yet this is not necessarily the case. Shell's marketing plan differs from Arco's and it may increase gasoline sales even at a higher price. The court is unable to determine whether a switch to Shell gasoline will impose hardship on the plaintiffs.

---

**6.** Shell also asserts that it would suffer if the termination were enjoined, but the PMPA directs the court to consider the hardships only of the franchisor and the franchisee, not those of any successor franchisor. See 15 U.S.C. § 2805(b)(2)(B).

The court does recognize that because of the vague nature of the VRP, denying the preliminary injunction places the plaintiffs in an extremely vulnerable position. True, for the first six months of their leases, plaintiffs' stated rents will be lower than they were under Arco. But after the first six months, these stated monthly rents become considerably higher, e.g., from $1300 to $2900, from $2000 to $4700, from $2000 to $4500, etc. and plaintiffs contend that such high rents would impose severe hardship. Shell points out that, after the first six months, the VRP will go into effect and reduce the rents stated in plaintiffs' leases. Because the terms of the VRP have not been specified, however, plaintiffs have no guarantee that it will be applied in a manner that will allow them to continue their operations. Conceivably, without stated standards, Shell could apply the VRP in an arbitrary, or even discriminatory, manner based on plaintiffs' conformity to Shell's marketing plans. It is this potential for arbitrary treatment that the PMPA was specifically designed to address. See S.Rep. No. 731, 95th Cong. 2d Sess. 17–19, *reprinted in* 1978 U.S.Code Cong. & Ad. News 875–77. Accordingly, even though the court recognizes that Arco may suffer hardship, the court concludes that the balance of hardships favors the plaintiffs.

It is ordered, therefore, that plaintiffs' motion for a preliminary injunction be granted to the extent it enjoins Arco's termination of their franchises.[7] The motion is denied however to the extent it seeks an order directing Arco to offer plaintiffs an opportunity to purchase Arco's interest in the franchises' premises. Such relief would scarcely be preliminary; it would be permanent. Moreover, even assuming in-

valid termination, the statute does not provide plaintiffs with this remedy.

## PRELIMINARY INJUNCTION

After hearing and consideration of plaintiffs' motion for a preliminary injunction, and on the grounds stated in the memorandum of decision filed November 27, 1985, it is ordered that the defendants Arco Petroleum Products Co. and Shell Oil Company, their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who receive actual notice of this order are enjoined as follows until further order of the court:

(1) that defendant Arco continue to provide gasoline and perform all other terms of the franchise relationship with each plaintiff dealer for the duration of the dealer's lease period, and conform to the provisions of 15 U.S.C. § 2801 *et seq.* with regard to any non-renewal; and

(2) that defendant Arco not take any action to alienate its ownership interest in said premises, and that defendant Shell take no action to acquire any such interest except in conformity with the provisions of 15 U.S.C. § 2801 *et seq.*[1]

---

**7.** This order is without prejudice to defendants' seeking reconsideration should Arco offer plaintiffs an opportunity to purchase the premises or should Shell specify the terms of its VRP.

The court has discretion in ordering plaintiffs to post a bond prior to the issuance of the preliminary injunction. See 15 U.S.C. § 2805(b)(3). In the instant case, defendants have not made an adequate showing regarding such a bond. The preliminary injunction, there-

fore, is ordered without a requirement that plaintiffs post a bond. This order is made without prejudice to defendants' seeking reconsideration pursuant to procedural order to be entered.

**1.** It is not ordered at this time that plaintiffs give security, except that this may be ordered in accordance with the court's procedural order entered contemporaneously herewith.