**FLORHAM PARK CHEVRON, INC., et al, Plaintiffs,**

v.

**CHEVRON U.S.A., INC., et al., Defendants.**

**Civ. A. No. 86–4748.**

United States District Court, D. New Jersey.

Feb. 25, 1988.

Golden Gate U.L.Rev. 879, 927 (1980).

H. Laddie Montague, Martin Twersky, Berger & Montague, P.C., Philadelphia, Pa., for plaintiffs.

James R. Loftus, III, Gerald P. Fox, Collier, Shannon, Rill & Scott, Washington, D.C., for defendant Cumberland Farms, Inc.

Robert P. Taylor, Pillsbury, Madison & Sutro, San Francisco, Cal., Frank M. Ciuffani, Wilentz, Goldman & Spitzer, Woodbridge, N.J., for defendant Chevron, USA, Inc.

## OPINION

WOLIN, District Judge.

In the underlying action, plaintiffs, eighteen Chevron or Gulf dealers in New Jersey, Pennsylvania, and Delaware, challenge the transfer of their service station leases from Chevron to Cumberland Farms as violative of the Petroleum Marketing Practices Act. Two summary judgment motions have already been heard. Before the Court today are three motions: (1) Defendant–Chevron's Motion for Partial Reconsideration of the November 4, 1987 summary judgment motion; (2) Three Plaintiffs' Motion for Equitable Relief; and (3) Plaintiffs' Motion for Reversal of Magistrate Hedges' December 4, 1987 Order Denying a Special Protective Order.

I. *Defendant—Chevron's Motion for Reconsideration*

Defendant-Chevron brings this motion pursuant to Fed.R.Civ.P. 52 and Local Rule 12(I) for reconsideration, alteration and/or amendment of the Opinion and Order entered on November 4, 1987, in connection with defendant's motion for summary judgment. Specifically, Chevron seeks the alteration of "those portions of the Opinion and Order wherein it was held as a matter of fact that Chevron had entered into a franchise agreement with plaintiff Wesley R. Pinson d/b/a West End Gulf after the occurrence of changes in relevant facts and circumstances which led to Chevron's determination to withdraw from the marketing of motor fuel in the State of New Jersey." In support of its application, Chevron has submitted supplemental affidavits which provide the Court with information not previously before the Court.

Plaintiff-Wesley Pinson (West End Gulf), argues in response to defendant's motion that the standards set forth for reconsideration under Fed.R.Civ.P. 52 and Local Rule 12(I) have not been met. In addition, beyond the procedural problems with defendant's motion, plaintiff contends that the motion should be denied as it attempts to raise issues of fact where none exist. This Court agrees.

At the outset, the Court notes that while Fed.R.Civ.P. 52(b) provides in part that "[u]pon motion of a party made not more than 10 days after entry of judgment the Court may amend its findings or make additional findings and may amend the judgment accordingly," a district court does *not* engage in fact-finding within the meaning of Fed.R.Civ.P. 52 on a motion for summary judgment. *See DeLong Corp. v. Raymond International, Inc.,* 622 F.2d 1135, 1138, n. 2 (3d Cir.1980). It follows then, that defendant's motion, pursuant to Fed.R.Civ.P. 52, for reconsideration or amendment of findings made in connection with the summary judgment motion is procedurally inappropriate.

Moreover, although the *Delong* opinion indicates that a motion to alter or amend, brought pursuant to Fed.R.Civ.P.

59(e), is the appropriate rule to proceed under in such an instance, this Court notes that defendant's motion for amendment was not filed within the ten day time limitation set forth in Fed.R.Civ.P. 59(e). The significance of such is, of course, in its nonrelaxibility as compared with the more flexible time limitation set forth in Fed.R. Civ.P. 52(b). *See* Practice Comments to Fed.R.Civ.P. 59(e). Thus, despite the consent of all parties and the court to file this motion for reconsideration out of time under Rule 52(b), such cannot be allowed under Rule 59(e).

Furthermore, Local Rule 12(I) provides, in pertinent part, that "[t]here shall be served with the notice [of motion for reargument] a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked" (emphasis added). Defendant has submitted several supplemental affidavits along with a memorandum in support of its motion which sets forth the following items which counsel believes the Court has overlooked:

(1) Cumberland Farms submitted four different bids to Chevron and several letters modifying these bids;

(2) The bid tentatively accepted by Chevron's Board of Directors on November 7, 1985 was that set forth in Cumberlands telex of October 30, 1985 and letter of October 30 which was received by Chevron on October 31, 1985;

(3) A Chevron financial statement was completed and executed on August 27, 1985 between Pinson and Chevron;

(4) Pinson completed a financial statement for the Somerset Trust Company in August 27, 1985;

(5) Pinson completed an application for Chevron dealership and a Chevron dealer credit application on September 5, 1985;

(6) On October 9, 1985, Chevron approved Pinson's application for credit approval;

(7) The lease was prepared and dated on October 16, 1985 for a term to commence in November, 1985;

(8) The lease was delivered to Pinson on or before October 23, 1985; and

(9) Pinson may have signed the lease on October 23, 1985.

■ Only one of the above matters (# 7), which defendant now seeks the Court to recognize was presented in affidavits or exhibit form to the Court on the motion for summary judgment. *See,* Exhibit 2M to declaration of Jeffrey Schmidt. The other factors are first before the Court for consideration on this motion for reconsideration. Local Rule 12(I) does not, however, contemplate a Court looking to matters which were not originally presented, but which have since been provided for consideration. *DeLong Corp. v. Raymond International, Inc.,* 622 F.2d 1135, 1140 (3d Cir.1980). As the Court of Appeals for the Third Circuit noted in addressing the contention that a district court had abused its discretion in denying a motion for reargument on summary judgment:

> [Plaintiff] does not assert that the evidentiary material which it later sought to introduce on the motion for reargument was unavailable or unknown to it at the time of the original hearing. Nor does such reason appear in the record. The district court therefore stated:

>> The scope of [defendant's] … motion [for summary judgment] was clear on its face. If these affidavits and exhibits were to be advanced to meet the motion they should have been advanced then. If time were needed to gather and present them, an adjournment should have been requested.

>> It is important to observe that these affidavits and exhibits were in the possession of [plaintiff] or available without seeking discovery from [defendant].

We accordingly cannot conclude that the district court abused its discretion in denying [plaintiff's] motion for reconsideration.

*DeLong,* 622 F.2d at 1140.

Although defendant-Chevron does not assert that the above facts were unavailable or unknown to it at the time of the original hearing, it does argue that since the date of the lease was not at issue on the motion for summary judgment, neither party made any effort to inform the Court of the date that the franchise relationship between Pinson and Chevron began or the dates on which any of the Cumberland Farm's bids were received by Chevron.

Chevron's argument is without merit. In consideration of defendant's motion for summary judgment as to Count II of the complaint, the Court was specifically asked to look at the date of the franchise relationship between each plaintiff and Chevron and to determine the timing of a change in relevant circumstances which led to Chevron's decision to withdraw from the market.[1] (p. 6–7, Nov. 4 Opinion of Judge Sarokin).

Once the Court had concluded that the underlying facts relevant to the issue of Chevron's determination to withdraw from the market were not in dispute, it found that such determination to withdraw was made on November 7, 1985, when Chevron's board tentatively accepted Cumberland Farm's bid. Recognizing that the PMPA requires that the determination to withdraw "be based upon the occurrence of changes in relevant facts and circumstances after [the date on which the franchise were entered into or renewed]," the Court addressed the parties' contentions as to such change in circumstances. 15 U.S.C. § 2802(b)(2)(E)(i)(II). The Court agreed with *Chevron's* contention that the appearance of Cumberland Farms as a willing buyer constituted a change in relevant cir-

---

1. Count II of the Complaint alleges that Chevron's market withdrawal defense under P.M.B.A. has three deficiencies—(1) the determination to withdraw was made prior to the latest renewal of plaintiffs' franchises; (2) the determination was not based on a change in circumstances that occurred after the latest renewal; and (3) Cumberland Farms had not made good faith, nondiscriminatory offers of franchises to plaintiffs. Thus, in order to prevail on its summary judgment motion as to Count II, Chevron had to demonstrate that no genuine issue of material fact existed as to any of the above three allegations.

cumstances within the meaning of 15 U.S. C. § 2802(b)(2)(E)(i)(II). Given this, the Court continued with its analysis, holding that the date of the changed circumstances was the date of Chevron's receipt of Cumberland Farm's bid. Though Chevron's determination was not made until November 7, 1985, when the board tentatively accepted the bid, the Court held the changed circumstance upon which this determination was based was the submission of the bid itself. The Court acknowledged that the record did not contain the specific date of Chevron's receipt of the bid, but from the evidence before it, the Court was able to conclude that the bid was received on some date between September 20 and October 30, 1985.

The Court then turned to the leases between Chevron and each plaintiff to establish the date on which the franchises were entered into or last renewed. Upon review of the lease agreement between plaintiff-West End Gulf and Chevron, the Court found that a franchise relationship had been entered into between the parties as of November 1, 1985.

It is clear from a review of the November 4, 1987 Opinion and the papers submitted in connection with such, that both the date the franchise relationship was entered into and the date of the relevant change in circumstances were before the Court. Any affidavits and exhibits in possession of the parties at that time relevant to the motion for summary judgment should have been advanced then.

Finally, in regard to defendant's contention that Judge Sarokin overlooked the fact that the West End Gulf lease was dated October 16, 1985, this Court finds no support for such an assertion. While, surely it can be said that district court judges may make mistakes and that they, like others, may inadvertently overlook a matter, judicial deference to Judge Sarokin requires a finding that such is not the case here. The date defendant refers to is extremely visible and directly at the top of the lease

agreement. Further, any debate defendant may have with Judge Sarokin's conclusion that the November 1, 1985 date set forth in the first paragraph of the lease was the date the franchise relationship was entered into should be dealt with in the normal appellate process, not on a motion for reargument under Local Rule 12(I).

Defendant–Chevron's motion for reconsideration, alteration or amendment of the November 4, 1987 Opinion and Order is therefore denied. An Order in conformity with the Opinion in this Motion shall be submitted by defendant-Chevron.

II. *Plaintiffs' Motion for Equitable Relief*

Plaintiffs, Al Incudine's Gulf, Havertown Gulf and Laird's Gulf (movants), move before the Court, pursuant to 15 U.S.C. § 2805(b)(1) of the Petroleum Marketing Practice Act for equitable relief in the form of an Order requiring defendants Chevron and Cumberland Farms to offer them the right to purchase the stations they currently lease, at the purchase prices paid by Cumberland Farms in the May 31, 1986 transaction between Chevron and Cumberland Farms. Defendant–Cumberland Farms opposes this motion on its merits, while defendant-Chevron primarily opposes the timing of the motion as premature.

In order to properly address this motion, a brief review of the procedural history of this matter is necessary.

On December 1, 1986,[2] plaintiffs, eighteen Chevron and Gulf dealers in New Jersey, Pennsylvania and Delaware, filed an eight-count complaint seeking injunctive relief and damages against Chevron U.S.A, Inc. and Cumberland Farms for various violations of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801–2806, and of New Jersey law.

On September 25, 1987, the Honorable H. Lee Sarokin issued an Opinion and Order following cross-motions for summary judgment on Counts I, III and IV by plaintiff,

---

**2.** The New Jersey plaintiffs filed a complaint on December 1, 1986. A second complaint, filed shortly thereafter by Delaware and Pennsylvania plaintiffs, was subsequently consolidated with the prior complaint.

and defendant, Chevron U.S.A., Inc. Count I alleged that defendant Chevron had violated Section 102 of the Petroleum Marketing Practices Act, 15 U.S.C. § 2802. Specifically, Count I alleged that Chevron had not withdrawn from the market, but rather had sold the premises in accordance with § 2802(b)(3)(D)(i)(III) and subsequently violated § 2802(b)(3)(D)(iii), as Chevron had sold the stations in dispute without first making a bona fide offer to the franchisees or giving the franchisees the right of first refusal. Count III of the complaint set forth plaintiffs' contention that even if Chevron's attempt at withdrawal was made in good faith, such was violative of the PMPA, 15 U.S.C. § 2802(b)(2)(E)(iii)(I) and (II), and Count IV alleged a failure to provide plaintiffs with proper notice of withdrawal in violation of 15 U.S.C. § 2804(b)(2) of the PMPA. The Court denied plaintiffs' motion for summary judgment as to Counts I, III and IV and granted defendant-Chevron's motion for summary judgment as to those counts. By Opinion and Order dated September 25, 1987, the Court held: (1) that Chevron had failed to renew its franchise relationships with plaintiffs, thus triggering the PMPA; (2) that Chevron had withdrawn from the marketing of motor fuel through retail outlets in the relevant geographic area; (3) that Cumberland Farms was a "franchisor" to whom Chevron's leases with plaintiffs could be assigned; and (4) that Chevron gave plaintiffs timely notice of its nonrenewal.

On November 4, 1987, Judge Sarokin issued another Opinion and Order in this matter, reconsidering the September 25, 1987 Opinion and Order and deciding defendants' motion for summary judgment as to the remaining counts of the complaint. In addressing plaintiffs' motion for reconsideration, the Court, in pertinent part, granted plaintiffs' request that the September 25, 1987 Opinion be modified to reflect the fact that Chevron had admitted that its market withdrawal defense was unavailable as to plaintiffs, Al Incudine's Gulf, Havertown Gulf and Laird's Gulf.[3] The Court concluded, therefore, that its earlier grant of Chevron's motion for summary judgment on Count I was improper as to these three plaintiffs. Reconsidering the September 25, 1987 Opinion in this regard, the Court found that these three plaintiffs were entitled to summary judgment on Count I of the complaint. In addition, the Court ordered that Counts III and IV of the complaint with respect to these three plaintiffs be denied as moot. As to the remaining plaintiffs, the Court denied defendants' motion for summary judgment on Counts II, VII, VIII and IX[4] and granted defendants' motion on Counts V and VII.[5]

Having been granted summary judgment on Count I of the complaint, which alleged that plaintiffs had been non-renewed by Chevron, that the market withdrawal defense of 15 U.S.C. § 2802(b)(2)(E) was unavailable to Chevron, and that Chevron had sold the premises on which the plaintiffs' stations were located in violation of 15 U.S.C. § 2802(b)(3)(D)(iii), plaintiffs, Al Incudine's Gulf, Havertown Gulf and Laird's Gulf now contend that they are entitled to equitable relief as provided by 15 U.S.C. § 2805(b)(1), in order to remedy the effects of Chevron's failure to comply with § 2802(b)(3)(D)(iii). Moreover, recognizing that title to the stations in question is now in the hands of Cumberland Farms, plaintiffs call this Court's attention to the Asset Purchase Agreement between Chevron and Cumberland Farms, which specifically

---

**3.** The November 4 Opinion does not indicate the reasons, if any, behind Chevron's concession as to the unavailability of the market withdrawal defense to these three plaintiffs. At oral argument on this motion, however, counsel represented that because these three plaintiffs had less than three (3) year leases, the market withdrawal defense of § 2802(b)(2) was unavailable.

**4.** Count II alleged that Chevron's withdrawal was in bad faith and that because Cumberland Farms offered new leases in bad faith, Chevron could not utilize the market withdrawal defense. Count VII alleged a violation of 15 U.S.C. § 2802(b)(3)(A) against Cumberland for offering leases in bad faith. Count IX alleged a violation under Pennsylvania law and Count VIII alleged a violation of Delaware law—the latter is, of course, inapplicable to movants, who are dealers in Pennsylvania.

**5.** Count V alleged a constructive termination and Count VI alleged a breach of contract.

makes provision for the mechanism necessary to carry out any grant of equitable relief to plaintiffs. *See*, Exhibit A to Plaintiff's Memorandum in Support of this Motion. Finally, plaintiffs request that any rent paid to Cumberland Farms since May 30, 1986, the date of effectuation of the Chevron/Cumberland Farms asset purchase transaction, be credited towards the purchase price offered the plaintiffs should their motion for equitable relief be granted.

In order to decide plaintiffs' motion, this Court must address the following issues: (1) Does the PMPA allow for the type of equitable relief requested by the plaintiffs?; and (2) If so, should such relief be granted and at what price?

### 1. *Relief Available Under PMPA*

Section 2802(a) of the Petroleum Marketing Practices Act provides that no termination or nonrenewal shall occur unless provided for by § 2802(b) or § 2803. Under § 2802(b), a franchisor, *i.e.*, Chevron, may choose to nonrenew the franchise relationship if proper notification is given and the nonrenewal is based upon a ground set forth in § 2802(b)(2) or (3). In the earlier summary judgment motions before the Court, Chevron admitted that it had no ground for the nonrenewal of these three plaintiffs' franchises under § 2802(b)(2), including the market withdrawal defense available under § 2802(b)(2)(E). Chevron therefore was left with § 2802(b)(3) or § 2803 to find a basis for its nonrenewal. Since Chevron could find no other ground for its nonrenewal of plaintiffs' franchise relationships, it was held liable for improper nonrenewal.

Once a party is found to be in violation of § 2802 or § 2803, the enforcement provisions of the PMPA are triggered. 15 U.S. C. § 2805(a). Under § 2805(b)(1), this Court is empowered to grant such equitable relief as it determines is necessary to remedy the effects of a failure to comply with the requirements of § 2802 or § 2803. Such equitable relief includes the granting of mandatory or prohibitive injunctions. 15 U.S.C. § 2805(b)(1).

Cumberland Farms contends, however, that the only permanent injunctive relief contemplated by the PMPA is the continuation of or renewal of a franchise relationship as set forth in § 2805(e). This Court disagrees. Section 2805(b) clearly provides that a Court "shall grant such equitable relief *as the court determines is necessary* to remedy the effects of any failure to comply with the requirements of section 2802 or 2803...." (emphasis added). Section 2805(e), on the other hand, is limited by its own terms to the power of the Court to compel a continuation or renewal of a franchise relationship. Plaintiffs do not request the continuation or renewal of their franchise relationships with Chevron in this action. Section 2805(e) is therefore inapplicable.

Furthermore, if Cumberland were correct in its assertion that the only equitable relief available under the statute is an order to reinstitute a franchise agreement or continue a franchise relationship, § 2805(b) would be rendered meaningless. Section 2805(b) speaks of the power of the Court to grant injunctive relief in general and does not limit itself to the power of the Court to compel the continuation or renewal of a franchise relationship as does § 2805(e). Likewise, the legislative history provided by Cumberland is unpersuasive as it is limited to § 2805(e) and in no way applies to § 2805(b).

Finally, Cumberland contends that the case law under PMPA precludes the relief requested by plaintiff-movants. In support of such contention, Cumberland cites four district court cases. While on the surface the cases cited appear to be on point, a closer review of such shows that they are all inapposite or involve mere *dicta*. For example, in *Avramidis v. Atlantic Richfield Co.*, 623 F.Supp. 64 (D.Mass.1985), on a motion for a preliminary injunction the district court held that PMPA does not provide franchisees with the right to force the sale of their stations because such would be permanent and not preliminary in nature. In *Southern Nevada Shell Dealer Ass'n v. Shell Oil Co.*, 634 F.Supp. 65 (D.Nev.1985), another preliminary injunction case, the market withdrawal defense

of § 2802(b)(2)(E) governed the court's analysis of the right of first refusal. The court's discussion of the "OR" clause between subsection (I) and (II) of § 2802(b)(2)(E)(iii) is however irrelevant to this action. Chevron has already admitted that § 2802(b)(2)(E) is inapplicable as to movants. Similarly, in *ARCO v. Brown*, No. 85 C 515, slip op. (N.D.Ill. Oct. 21, 1985), a case involving termination rather than non-renewal, the district court's dismissal of the complaint was based upon a finding that § 2802(b)(2)(E) had been complied with. Lastly, while *Brown v. American Petrofina Marketing*, 555 F.Supp. 1327 (M.D.Fla.1983), did reject plaintiff's pursuit of the right of first refusal, it did so, in part, because of its finding that plaintiff had been properly non-renewed under § 2802(c) and § 2802(b)(2)(C).

■ In sum, this Court is clearly empowered under PMPA to grant the type of equitable relief requested by plaintiff-movants. *See, e.g., Abadjian v. Superior Court*, 168 Cal.App.3d 363, 214 Cal.Rptr. 234 (1985) (ordering movants the right of first refusal). Furthermore, defendants have specifically contemplated the mechanism necessary to comply with an order granting such equitable relief to the plaintiffs. See the Asset Purchase Agreement attached as Exhibit A to Movants Memorandum in support of this Motion. The only remaining question is whether such should be granted in this instance and at what price?

### 2. *Equitable Relief in This Instance*

The determination as to whether to grant these three plaintiffs their request for a mandatory injunction, ordering defendants to offer them the right of first refusal as to the stations which they currently lease, is based upon an analysis of traditional equitable criteria. The fact that the statute authorizes injunctive relief does not rid the Court of its obligation to determine whether such relief is appropriate. *United*

*States v. Price*, 523 F.Supp. 1055 (D.N.J. 1981), *aff'd*, 688 F.2d 204 (3d Cir.1982).

In analyzing the appropriateness of plaintiffs' request for equitable relief, this Court is mindful that the remedy provided should be narrowly tailored to fit the violation. *Society for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239 (2d Cir.1984); *U.S. v. Spectro Foods Corp.*, 544 F.2d 1175 (3d Cir.1976). Moreover, the Court recognizes that mandatory permanent injunctions are looked upon disfavorably and are generally only granted in compelling circumstances. *Price*, 523 F.Supp. at 1067.

This Court thus begins its analysis of plaintiffs' motion by reviewing the violation which forced this situation.

At some time during 1985, Chevron decided to solicit bids for the purchase of certain marketing assets, including the service stations in question. Cumberland Farms submitted the successful bid and subsequently, Chevron and Cumberland Farms entered into an agreement whereby Cumberland assumed all of Chevron's obligations with its service stations in a certain geographical area. The Chevron–Cumberland Farms agreement went into effect on May 31, 1986. As a result of such transaction, Chevron was found to have failed to renew its franchise relationships with plaintiff-dealers, within the meaning of PMPA. See September 25, 1987 Opinion at pp. 7–9.

Chevron, thereafter, alleged that its non-renewal was justified because it had made a good faith determination in the normal course of business to withdraw from the market as provided by 15 U.S.C. § 2802(b)(2).[6] However, this defense, Chevron admitted, was unavailable as to the three plaintiffs in this motion. As a result, Judge Sarokin found summary judgment in favor of these three plaintiffs on Count I.

In granting summary judgment to these three plaintiffs on Count I, Judge Sarokin did no more than acknowledge what was

---

**6.** It should be pointed out that Chevron's market withdrawal defense has been successfully asserted so far as to the other plaintiffs in this action. The technical problem concerning the term of plaintiff-movants' leases is what made the defense unavailable as to these three. See fn. 3, *supra*.

apparent; Chevron had chosen not to renew its franchise relationships with these three plaintiffs and had no justification for such under PMPA. Judge Sarokin in no way indicated in either the September 25, 1987 or the November 4, 1987 Opinion that he found Chevron to have violated § 2802(b)(3)(D)(iii) or any other specific subsection of § 2802. This Court will not expand upon the earlier holdings in any way. Thus, this Court concludes that the violation which plaintiffs seek to have remedied through an Order directing Chevron to offer them the right of first refusal is no more than Chevron's unjustified non-renewal of its franchise relationships with these plaintiffs.

■ In balancing the equities of the situation, this Court does not believe that an Order directing Chevron to provide these three plaintiffs with the right of first refusal (a directive which this Court believes to be tantamount to a forced sale of the land), is an appropriate remedy for such a violation. Had Chevron not violated the statute as to these three plaintiffs they would, at best, have received renewals of their leases with Chevron. Since this Court is unable to compel the continuation or renewal of plaintiffs' franchise relationships with Chevron (see § 2805(e)), it adopts an alternative form of relief for these three plaintiffs pending the outcome of this litigation.[7] During the course of this litigation, these three plaintiffs shall have their franchise relationships with Cumberland continued, however, the terms of their most recent lease agreement with Chevron shall govern the relationship; there shall be no termination of or nonrenewal of the franchise relationship, except for good cause shown to the satisfaction of this Court; and any rent increases or changes in the term of the lease agreement shall have the approval of this Court prior to effectuation.

In sum, plaintiffs' motion for equitable relief in the form of an Order directing

Chevron to offer the right of first refusal to plaintiffs is denied without prejudice. This Court grants an alternative form of relief, however pending the outcome of this litigation, which this Court believes acknowledges the extent of plaintiffs' improper non-renewal at this time. An Order in conformity with the Opinion on this motion shall be submitted by plaintiffs.

III. *Plaintiff's Motion for Reversal of Magistrate Hedge's Order Denying Protective Order*

■ This motion is brought by plaintiffs, eighteen Chevron and Gulf dealers in New Jersey, Pennsylvania and Delaware, pursuant to Fed.R.Civ.P. 72(a). Plaintiffs object to and seek reversal of Magistrate Hedges' Discovery Order of December 7, 1987, to the extent the Order compels plaintiffs to produce invoices embodying purchases of gasoline from all sources for the period January 1, 1984 to the present while denying plaintiffs' motion for a protective order pursuant to Fed.R.Civ.P. 26(c).

The standard to be applied by a district court in reviewing a magistrate's order is set forth in Fed.R.Civ.P. 72(a). Such rule provides that a district court judge shall consider objections made by the parties and "shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed.R.Civ. P. 72(a).

On December 7, 1987 Magistrate Hedges granted defendant Cumberland Farm's motion to compel the production of plaintiff's gasoline purchase invoices, finding that there was no legitimate basis on which to withhold them and that such invoices were discoverable on the issue of plaintiff's damages. (Magistrate Hedges Opinion of Dec. 7, 1987 at 1, 2.) In addition, Magistrate Hedges denied plaintiffs application for a special protective order concluding that:

---

7. It should be noted that the denial of plaintiffs request for equitable relief at this time, does not foreclose the possibility of such being granted in the future, based upon findings of other violations of PMPA. This Court can simply not justify an order forcing the sale of these stations

based upon a failure to offer three-year leases. If it is shown at a later date, however, that Cumberland Farms has violated § 2802 or § 2803, this Court may have a stronger basis for justifying such form of equitable relief and will certainly reconsider plaintiffs' request then.

The harm which plaintiffs seek to protect against is, on this record, speculative. In any event, I am not satisfied that the intent of Rule 26 was to permit a party to erect a shield around information which demonstrates, or tends to demonstrate, a breach of contract on the party's part. That is simply a risk which a party must bear in the context of commercial litigation such as this. (Magistrate's Opinion at p. 2).

This Court finds Magistrate Hedges' conclusions and holding to be neither "clearly erroenous" or "contrary to law". First, it is clear that the discovery requested by Cumberland is relevant to the issue of plaintiff's damages. While it is true that the primary relief sought by plaintiffs is equitable relief in the form of an Order directing defendants to offer them the right to purchase their service stations, plaintiffs also seek money damages.[8] To that end, plaintiffs have produced massive amounts of documents allegedly showing that gasoline sales and the profitability of plaintiffs' service stations have been severely limited since Cumberland Farms acquisition of the properties from Chevron. Cumberland seeks to counter this contention by showing how much of each type of gasoline was purchased, from whom it was purchased, what the purchase price was, and by comparing these invoices with other records, what, if any, change in profitability has occurred. Such is permissible.

Second, the refusal by Magistrate Hedges to enter a special protective order pursuant to Fed.R.Civ.P. 26(c) was well justified. Rule 26(c) provides that where "justice requires [a protective order may issue] to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense...." In this instance, the contention that certain plaintiffs may be forced to withdraw from this lawsuit because of "misbranding" which may be found by the production of these invoices, does not meet the "annoyance, embarrassment, oppression or undue burden or expense" standard of Rule 26(c). As Magis-

trate Hedges held, the harm which plaintiffs seek to protect themselves against is, on the record, speculative. (Magistrate's Opinion at p. 2). Moreover, since a protective order governing discovery in this litigation is already in place, plaintiffs have court protection against defendants' use of the information in the invoices outside this litigation. In addition, should defendants seek to use such information to terminate or non-renew a franchise relationship, plaintiffs may always seek an injunction against such action as was done in *Gilderhus v. Amoco*, 470 F.Supp. 1302 (D.Minn. 1979) and *Di Napoli v. Exxon*, 549 F.Supp. 449 (D.N.J.1981).

For the foregoing reasons, plaintiff's motion for reversal of Magistrate Hedges' Discovery Order is denied. Cumberland's request for an award of costs and attorneys' fees associated with the preparation, presentation and filing of the opposition to plaintiff's motion is also denied.

An Order in conformity with the Opinion in this Motion shall be submitted by plaintiffs.

Conclusion:

This Opinion has dealt with three motions in this action. The first, defendant-Chevron's motion for partial reconsideration of the November 4, 1987 Opinion is denied. The second motion, made by three plaintiffs for equitable relief in the form of an order granting them the right of first refusal in connection with the assignment of their service stations, is denied without prejudice. An alternative form of equitable relief pending the outcome of this litigation has been ordered. The third motion before the Court, plaintiffs' motion for reversal and objection to the Magistrate's Order of December 4, 1987, is denied.

---

**8.** Should a plaintiff withdraw his request for relief in the form of money damages, the rele-

vance of such invoices would become questionable.